Case 4:22-cv-03385   Document 112   Filed on 10/12/23 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
October 12, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CFE INTERNATIONAL LLC, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-22-3385 |
| § | |
| GUILLERMO TURRENT SCHNAAS *and* § | |
| JAVIER GUTIÉRREZ BECERRIL, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

CFE International LLC (CFEi) sued Guillermo Turrent Schnaas and Javier Gutiérrez Becerril for breaching duties they allegedly owed under a contract and under Delaware state law. (Docket Entry No. 51). CFEi sued in Texas state court, seeking actual damages over $1,000,000; exemplary damages; pre- and post-judgment interest; and attorney's fees, expenses, and costs of court. (Docket Entry No. 1). The defendants removed.

The defendants then moved to dismiss based on *forum non conveniens*, arguing that Mexico is a better forum. (Docket Entry No. 57). CFEi has responded, the defendants have replied, and CFEi has sur-replied. (Docket Entry Nos. 63, 68, 72). One of the disputes raised in the motion to dismiss briefing is whether Mexican law applies to the claims, defenses, or rights the parties assert. The defendants and a third-party, JG Energy, have refused to produce documents requested in discovery, asserting the right under Mexican law of both corporate entities and natural persons against self-incrimination. The defendants emphasize that they face criminal proceedings in Mexico. Unlike United States law, which does not provide a right against self-incrimination in relation to the contents of documents and does not protect corporate entities from self-

incrimination, Mexican law allows both corporate and natural entities to refuse to produce documents with potentially incriminating contents. The parties have submitted additional briefs on whether Mexican or United States law applied to the discovery issues. (Docket Entry Nos. 96, 104–105).

Based on the parties' briefs, the record, and the relevant law, the court denies the motion to dismiss on the basis of *forum non conveniens*. The court also determines that United States law, not Mexican law, applies to the discovery issue. The reasons for these rulings are set out below.

**I.     Background**

CFEi is a Delaware limited liability company formed in 2015, with its principal place of business and headquarters in Houston, Texas. (Docket Entry No. 51 at ¶ 2). CFEi's only member, CFE, is the state-owned electric utility company of Mexico. CFEi is responsible for "procur[ing] natural gas in the United States for transportation to Mexico for use in producing electricity for Mexican residents and businesses." (*Id.*). Guillermo Turrent Schnaas was CFEi's first Chief Executive Officer, and Javier Gutiérrez Becerril was its first Chief Operating Officer. (*Id.* at ¶¶ 11–12).

CFEi alleges that between 2012 and 2014, Turrent and Gutiérrez "engaged in multiple, undisclosed business ventures[.]" (*Id.* at ¶ 41). The alleged ventures included "steering the award of billions of dollars of overpriced natural gas supply and pipeline contracts to WWM [WhiteWater Midstream LLC] and its executives[.]" (*Id.* at ¶ 3). "WWM is a midstream service provider that operates in the gas delivery and sale business[.]" (*Id.* at ¶ 38). It is incorporated in Delaware and has its principal place of business in Austin, Texas. CFEi alleges that Turrent and Gutiérrez had "ongoing personal relationships and side dealings with individuals associated with WWM[,]" including WWM's co-founder, Matthew Calhoun. (*Id.* at ¶ 7).

In October 2012, Turrent and Gutiérrez formed the Mexican Energy Advisors Corporation, an energy consulting company, which listed its address as a Houston, Texas apartment owned by Calhoun "and used as the mailing address for at least three companies." (*Id.* at ¶ 42). In May 2013, Turrent was appointed as CFE's Director of Modernization. (*Id.* at ¶ 43). Calhoun formed the Antaeus Group LLC, with Gutiérrez as one of the principals. (*Id.*). In January 2014, Gutiérrez formed JG Energy Consulting Corporation, which also used Calhoun's apartment in Houston as the corporate address. (*Id.* at ¶ 44)

In 2016, Turrent and Gutiérrez awarded the West Texas Supply Agreement and the Waha Connector Agreements to WWM. These Agreements were executed in March 2017 and December 2016, respectively. (*Id.* at ¶ 52). In this lawsuit, CFEi alleges that the defendants "failed to conduct fair, arm's-length bidding processes and instead steered the award of both projects to WWM regardless of the deficiencies in WWM's proposals. Turrent and Gutiérrez hid those deficiencies by creating a false record of fair and competitive bidding[.]" (*Id.* at 53). In October 2017, the defendants awarded WWM a third contract, the South Texas Supply Agreement, which allegedly had a lifetime value of "billions of dollars." (*Id.* at ¶ 101).

Turrent and Gutiérrez dispute the allegations that they acted out of self interest and in breach of the fiduciary duties they owed to CFEi in awarding the Agreements. Turrent and Gutiérrez contend that they were public servants who entered into these energy contracts with WWM and other entities in good faith. (Docket Entry No. 57). Turrent and Gutiérrez assert that this lawsuit is motivated by politics, because the current Mexican administration disagrees with, and "seeks on a grand scale to undo the energy policies of the prior administration." (*Id.* at 17).

3

## II. The Legal Standard For *Forum Non Conveniens*

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "A court's authority to effect foreign transfers through the doctrine of *forum non conveniens* 'derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.'" *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (citation omitted). "When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case.'" *Kempe v. Ocean Drilling & Expl. Co.*, 876 F.2d 1138, 1141 (5th Cir. 1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

"[A] forum non conveniens dismissal must be based on the [court's] finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum." *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). The movant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987), *overturned on other grounds*, 490 U.S. 1032 (1989). "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.* The defendants must "demonstrate (1) the existence of an available and adequate alternative

4

forum and (2) that the balance of relevant private and public interest factors favors dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).

"In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 222 (5th Cir. 2000) (quoting *In re Air Crash*, 821 F.2d at 1165). To meet this relatively high burden, the defendants "must supply the Court with enough information for it to conduct a meaningful inquiry and balance the parties' interests." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 725 (W.D. Tex. 2008) (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 371 (5th Cir. 1992)).

### III. Analysis

#### A. The Adequacy and Availability of the Foreign Forum

"A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007). "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *Id.* "[D]ifferences in substantive and procedural law that . . . affect [a party's] rights [but] do not deprive [a party] of ELMA of redress for its alleged injury or cause unfairness" are considered adequate. *Empresa Lineas Maritimas Argentinas, S.A.*, 955 F.2d at 372 (5th Cir. 1992).

CFEi is an LLC, incorporated under Delaware law, and with its sole member in Mexico. Turrent and Gutiérrez are both United States and Mexican citizens and have stated that they "would submit to the jurisdiction of a Mexican court solely for the purposes of this dispute." (Docket Entry No. 57 at 10). A defendant's submission to the jurisdiction of an alternative forum makes the

forum available. *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 658 (S.D. Tex. 2003) (citing *Veba-Chemie A.G.*, 711 F.2d at 1245).

CFEi argues that Mexico is not an adequate forum because, as Turrent and Gutiérrez have conceded, the court would "have to apply Delaware substantive law." (Docket Entry Nos. 63 at 19, 57 at 19). But "a number of Fifth Circuit cases have held that Mexico is an adequate forum for litigation, despite differences in Mexican and American substantive and procedural law." *DTEX LLC*, 508 F.3d at 796. CFEi submits a declaration from Francisco Xavier Cortina Cortina, an expert on Mexican law, stating that he "is unaware of a Mexican court *ever* issuing a judgment applying Delaware breach of contract or fiduciary duty law." (Docket Entry No. 63 at 19) (emphasis in original). But the test for adequacy hinges on whether the parties will be able to assert certain claims, not on whether the foreign court can accurately apply United States law. Turrent and Gutiérrez have offered a competing expert declaration discussing Mexican courts that have applied foreign law. (Docket Entry No. 68 at 10). It is not necessary to resolve this dispute, because although Mexico is an available and adequate forum under the prevailing tests, the private and public forum non conveniens factors weigh heavily against dismissal.

B.  **The Private Interest Factors**

"The private interest factors enumerated in *Gilbert* include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of view of premises; [and] (5) all other factors that might make the trial quicker or less expensive." *DTEX, LLC*, 508 F.3d at 798 (citing *Gulf Oil Corp.*, 330 U.S. at 508).

1.  **Ease of Access to Sources of Proof**

6

The first private-interest factor, relative ease of access to sources of proof, is neutral. Turrent and Gutiérrez argue that some of the key documents might be "in Spanish and located in Mexico." (Docket Entry No. 57 at 13). In support of the assertion that the location and language of the documents favor dismissal, the defendants cite *Waste Mgmt. of La., L.L.C. v. Jefferson Par.*, 48 F. Supp. 3d 894, 913 (E.D. La. 2014), for the proposition that "[w]ith respect to the sources of proof, courts have determined that this factor will weigh in favor of dismissal where the relevant documents are found in a different country and written in a foreign language." The *Waste Mgmt.* opinion in turn cites *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 634 F. Supp. 842 (S.D.N.Y. 1986), *aff'd as modified*, 809 F.2d 195 (2d Cir. 1987), a case that arose from a massive chemical leak in a plant in India. All or nearly all the relevant records were located in India and were in Hindi. These records included "documentary evidence concerning design, training, safety and start-up, in other words, matters bearing on liability" and "records concerning the design, manufacture and operation of the Bhopal plant[.]" *Id.* at 858. The court held that the problems of accessing these records weighed heavily in the decision to transfer the case to India.

By contrast, in this case, only some of the relevant documents are both in Mexico and in Spanish. The transactions and dealings at issue occurred between Turrent and Gutiérrez on the one hand and WWM on the other. WWM has its principal place of business in Austin, Texas. The consulting companies, Mexican Energy Advisors and JG Energy Consulting, list Texas addresses. The defendants attach to their motion to dismiss both board meeting minutes that are in English, (Docket Entry No. 57-2), and documents from Mexico City that are in Spanish, (Docket Entry No. 57-3). CFEi has submitted a declaration stating that "[k]ey non-party witnesses and documents are also located in the United States." (Docket Entry No. 63 at 14). CFEi argues that documents relevant to its claims are in the United States, while many of the documents relevant to Turrent's

7

and Gutiérrez's defenses are in Mexico. (Docket Entry No. 63 at 21). Turrent and Gutiérrez assert that "evidence necessary to defend against CFEi's claims is located in Mexico[,]" without arguing that evidence necessary to prove their claims is located there. (Docket Entry No. 57 at 13). Turrent's and Gutiérrez's entitlement to discovery relevant to their defenses does not outweigh CFEi's right to discovery relevant to its claims.

There will be many Spanish and English-speaking witnesses and Spanish and English documents central to CFEi's claims and to Turrent's and Gutiérrez's defenses. (Docket Entry No. 63 at 24). "Whether the claims are litigated in [a foreign forum] or the United States, documents will have to be translated and witnesses will have to be transported." *Bund Zur Unterstutzung Radargeschadigter E.V. v. Raytheon Co.*, No. 04-CV-127, 2006 WL 3197645, at *8 (W.D. Tex. Aug. 30, 2006). This "is not a case where all the relevant documents and all the necessary witnesses are found in the foreign forum, such that convenience mandates dismissal." *Id.* This factor is neutral.

### 2. The Availability of Compulsory Process for Unwilling Witnesses

The second private interest factor, the availability of compulsory process for the attendance of unwilling witnesses, weighs against dismissal. "In making a *forum non conveniens* determination, the court should concentrate primarily upon the availability of key witnesses, especially third-party witnesses." *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 808 (S.D. Tex. 1998). There is a "heavy *burden* traditionally imposed upon defendants by the *forum non conveniens* doctrine[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (emphasis in original). In the § 1404(a) venue transfer context, which uses the same factors but requires "a lesser showing[,]" *id.*, a party arguing that a key witness's testimony favors transfer "must specifically identify the key witnesses and outline the substance of their testimony." *Qualls v.*

8

*Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 824 (S.D. Tex. 2022) (internal quotations omitted); *see* Wright & Miller, *Forum Non Conveniens—In General*, 15 Fed. Prac. & Proc. Juris. § 3828, at n.33 (3d ed. 2007) ("[D]efendants must delineate how witnesses not subject to compulsory process are critical to the actions. They are not, however, required to identify each potentially critical witness, nor to submit affidavits that provide significant evidentiary detail." (quoting *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1198 (C.D. Cal. 2004)).

CFEi's claims are based on pipeline and natural gas agreements entered into in the United States. (Docket Entry No. 51). CFEi alleges that "the individuals who witnessed Defendants' misconduct and were aware of it at the time were Defendants themselves . . . and the individuals and entities they collaborated with—WWM, Calhoun, Rundlof, Speiser, Travis, Antaeus Group, Arbor Glen Consulting, JG Energy, Denham Capital, and Mexican Energy Advisors—[] are all in the United States." (Docket Entry No. 63 at 21). CFEi alleges that these are the witnesses key to proving its claims. CFEi has explained why: these individuals witnessed and took part in the defendants' alleged misconduct.

In response, Turrent and Gutiérrez argue that the CFE board of directors is located in Mexico, and that the directors are key witnesses. (Docket Entry No. 57 at 12). But Turrent and Gutiérrez do not explain what specific information the directors have about the claims at issue. At most, Turrent and Gutiérrez identify individuals whose testimony may be relevant to the claims and defenses, but they do not explain what these witnesses would testify to. (Docket Entry No. 57 at 8, 14).

Turrent and Gutiérrez cite to *DTEX, LLC*, 508 F.3d at 799–800, for the proposition that "[t]he inability to compel the attendance of numerous unwilling witnesses weighs heavily in favor of dismissal." But in *DTEX, LLC*, the events at issue took place in Mexico and most of the

9

documents were in Mexico, and the parties had "not identified key party or nonparty witnesses who are in Texas." *Id.*  Here, critical entities and events relating to the alleged breaches of fiduciary duties are in Texas.  Turrent and Gutiérrez have identified critical entities and events relating to the alleged breaches of fiduciary duties.  But Turrent and Gutiérrez have not described these witnesses' likely testimony except to state, in their reply, that they need these individuals "to attest to any of Defendants' statements to the CFEi or CFE Board of Directors[.]" (Docket Entry No. 68 at 17).  This statement does not explain who these witnesses are or how their testimony is critical.  Nor does this statement provide a rationale for why these witnesses would be beyond the reach of compulsory process in Texas.

On the other hand, CFEi has identified United States witnesses who are key to their claims, and although their initial disclosures are also vague, they describe how the individuals have information directly related to the events at issue here. (Docket Entry No. 57-9).  Turrent and Gutiérrez have not met their heavy burden of showing that there are key witnesses in Mexico whose testimony would be unavailable in the United States.  This factor weighs against dismissal.

### 3. The Cost of Securing the Attendance of Willing Witnesses

Turrent and Gutiérrez argue that "[g]iven the large number of non-party witnesses and entities located in Mexico from whom Defendants will have to obtain discovery for litigation here in Texas, discovery would be much more costly than if this case were prosecuted in Mexico." (Docket Entry No. 57 at 16).  Turrent and Gutiérrez do not address the fact that there are several key witnesses in Texas.  Discovery from these witnesses would present similar costs if they were required to travel to Mexico. In contrast, in the cases Turrent and Gutiérrez cite, such as *DTEX, LLC*, all critical witnesses were located in a foreign jurisdiction.  In this case, many of the critical witnesses in this case are in the United States. Some are located in Austin, Texas—by Texas

standards, just down the road—or in other parts of the United States. It will be less expensive to secure their attendance in a United States court than in a Mexican court. This factor is therefore neutral.

### 4. The Ability to View the Premises

The next private interest factor is the ability to view the premises. The three agreements in dispute—the West Texas Supply Agreement, the Waha Connector Agreements, and the South Texas Supply Agreement—all concern projects in Texas, but given the issues, viewing the projects would not be helpful to a factfinder. This factor is entitled to little weight.

### 5. Other Practical Factors that Make Trial Easy, Expeditious, and Inexpensive

Turrent and Gutiérrez assert that, to the extent that they would like to implead CFE as the sole owner of CFEi, they would not be able to do so because it is unlikely that this Texas court would have personal jurisdiction over CFE. (Docket Entry No. 57 at 16–17). But "[a] defendant's inability to implead a third party is not dispositive," *DTEX, LLC*, 508 F.3d at 800, making this factor of little consequence.

Turrent and Gutiérrez also argue that this lawsuit is politically motivated. To the extent this is an argument about the weakness of the claims on the merits, there is no showing that proof bearing on the weakness of the claims or political reasons for their assertion cannot be obtained if the case is tried in Texas rather than in Mexico.

Turrent and Gutiérrez have not met their heavy burden of showing that dismissal is warranted based on the private interest factors, which are either neutral or weigh against dismissal.

### C. The Public Interest Factors

The relevant public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home;

11

(3) the interest in having a trial in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law; or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999). Each is discussed below.

### 1. Administrative Difficulties

The record does not contain information about court congestion. This factor is neutral.

### 2. The Interests of the Local Forum

Turrent and Gutiérrez argue that "[t]he facts of this case have greater ties to Mexico than to Texas[.]" (Docket Entry No. 57 at 19). But they acknowledge that "CFEi is technically based in Houston, and the agreements at issue were to have gas provided by Texas entities[.]" *Id.* This court has noted that "[t]here is a strong local interest" in a matter that "involves a local corporation and a contract that was partially performed in the Southern District of Texas." *S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 573 (S.D. Tex. 2007).

Here, the alleged breach of fiduciary duty arises from Delaware law, and the contracts at issue were between United States citizens, including Texas residents. *See Festor v. Wolf*, 647 F. Supp. 2d 750, 750 (W.D. Tex. 2009). The court acknowledges that CFEi's sole member is CFE and that this litigation bears on both Mexican as well as United States interests. Because the United States has a significant interest in resolving disputes related to misconduct based in the United States, this factor weighs slightly against dismissal.

### 3. Choice of Law

As Turrent and Gutiérrez have conceded, both an American or Mexican court hearing the case would "have to apply Delaware substantive law" to resolve the core fiduciary duty and breach

12

of contract claims, which arise under the LLC Agreement and are governed by Delaware law. (Docket Entry Nos. 63 at 19, 57 at 19).

For claims not governed by Delaware law, Texas follows the choice of law analysis in the *Second Restatement of Conflict of Laws*, applying the law of the state with the "most significant relationship" to an issue. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202 (Tex. 2000); *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992). The breach of contract claim is governed by Delaware law, based on the contract language. For tort issues for which the choice of law is unclear, under the *Restatement*, the factors used to determine the most significant relationship are:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflict of Laws* § 145 (1971).

The analysis centers not on the number of contacts, but rather on their qualitative nature. *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979). The parties are domiciled in both Texas and California. The parties' relationship is centered in Houston, where CFEi and one of the defendants are domiciled. The alleged billion-dollar dealings involved a company based in Austin, Texas, and the relevant events are alleged to have taken place at least in part in a Houston apartment.

Turrent and Gutiérrez argue that Mexico is the place of injury because CFEi's sole owner is CFE, the state-owned Mexican utility company, and the case concerns "[t]he Mexican people, and Mexican government[.]" (Docket Entry No. 57 at 19). Yes, the issues involve and concern

Mexico, but they also involve and concern Texas and parties domiciled here. Whether Delaware or Texas law applies, this court appears to be at least as well, if not better, equipped to apply Delaware or Texas law than a court in Mexico.

Turrent and Gutiérrez argue that because they intend to invoke their right against self-incrimination under Mexican law, this court cannot require them, or corporate entities related to them, to produce information that could be incriminating. (Docket Entry No. 57 at 20–21). As explained below, however, Mexican law does not determine the discovery rights and obligations in this case pending in a federal court. This factor weighs against dismissal.

### 4. The Burden on the Citizens

The final public interest factor, the interest in avoiding an unfair burden on citizens, weighs against dismissal. The connections between the transactions and people involved in this case and Texas are significant. CFEi is headquartered in Houston; one of the defendants is domiciled in Houston; and the transactions at issue were made with a company whose principal place of business is in Texas. Although the defendants' conduct has allegedly inflicted damage on Mexico, the dispute arises from an alleged breach of contract and breach of fiduciary duties established by Delaware law. Both the United States and Mexico have interests in the dispute. It would not be an unfair burden to impose jury duty in this case on citizens in this district. This factor weighs against dismissal.

Because both the public and private factors weigh against dismissal, the motion to dismiss for *forum non conveniens* is denied.

### D. The Discovery Dispute

Turrent and Gutiérrez, along with JG Energy—a company incorporated in the United States and 100% owned by Gutiérrez—have asserted a right against self-incrimination under Mexican

14

law in response to CFEi's discovery requests. Turrent and Gutiérrez argue that information revealed in discovery in this case may be used against them in pending criminal prosecutions in Mexico. Both parties and JG Energy have briefed this issue. (Docket Entry Nos. 96, 104–105). Turrent, Gutiérrez, and JG Energy urge the application of Mexican law in the interest of comity; CFEi argues that there is no basis to apply Mexican law.

"State law is of very little relevance to discovery in a federal action" except in "questions of privilege." Wright & Miller, *Exclusiveness of Procedures*, 15 Fed. Prac. & Proc. Juris. § 2005 (3d ed. 2007); *Poindexter v. Bonsukan*, 145 F. Supp. 2d 800, 803 (E.D. Tex. 2001). The documents that Turrent, Gutiérrez, and JG Energy refuse to produce are relevant to claims that arise under Delaware law. "Delaware courts look to the Restatement (Second) of Conflict of Laws for guidance in choice of law disputes." *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003). Section 139 of the *Restatement* provides that:

> (1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
>
> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

*Restatement (Second) of Conflict of Laws* § 139 (1971); *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 358 (3d Cir. 2007), *as amended* (Oct. 12, 2007).

CFEi states that "[d]uring the relevant time period, [Turrent and Gutiérrez] were U.S. citizens who lived and conducted work for CFEi in the United States, had personal Yahoo! email addresses, and used U.S. banks; and they have lived in the United States ever since. Entities [Turrent and Gutiérrez] controlled, such as JG Energy, are located and incorporated in the United States, and the address at which [Turrent and Gutiérrez] secretly operated their side businesses while working at CFEi is an apartment in Houston, Texas. There is no reason to believe any of the information sought from Defendants, let alone most of it, originated outside the United States." (Docket Entry No. 96 at 9). While Turrent and Gutiérrez dispute whether their main residences were in the United States during the relevant period, they do not otherwise dispute CFEi's statements. (Docket Entry No. 104). Instead, they argue that "Mexico's interests far outweigh U.S. interests" in the litigation as a whole. (*Id.* at 5). But, as discussed above, Texas has a significant relationship to the claims and defenses in this case, and, based on the allegations, to the documents and information sought in discovery.

Turrent, Gutiérrez, and JG Energy urge the application of Mexican law based on comity, which is a potential "special factor" under the *Restatement*. They point to cases in which courts have recognized another country's privilege against producing self-incriminating documents or information. *2M Asset Mgmt., LLC v. Netmass, Inc.*, No. 2:06-CV-215, 2007 WL 666987 (E.D. Tex. Feb. 28, 2007); *Madanes v. Madanes*, 186 F.R.D. 279 (S.D.N.Y. 1999). Federal courts appear to use two approaches in determining whether to allow a foreign privilege against discovery. Under the first approach, "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992) (internal quotation omitted). The

16

jurisdiction with the "predominant interest" is either "the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." *Astra Aktiebolag v. Andrx Pharms, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y.2002) *citing Golden Trade*, 143 F.R.D. at 521–22. Under this analysis, Texas law rather than Mexican law applies to Turrent's and Gutiérrez's invocation of the Mexican-law privileges they invoke: the privileges against a corporation's obligation to produce self-incriminating information, as well as the privilege against producing documents with self-incriminating content. The relationship between the parties was centered in Texas, and the communications were sent to or from the United States.

"The second approach, grounded in comity, is 'to look to the foreign nation's law to determine the extent to which the privilege may attach.'" *2M Asset Mgmt., LLC*, 2007 WL 666987, at *3 (quoting *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 535 (N.D. Ill. 2000)). Turrent and Gutiérrez urge this court to undertake a comity analysis using the factors laid out in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987).  The factors are:

> (1) the importance to the . . . litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

These documents that CFEi needs are plainly important to the litigation. Turrent and Gutiérrez do not take issue with the specificity of the document requests. They do claim that some meetings that are the subject of the documents "took place in Mexico[,]" and that former CFE Board members who may be the subject of the documents are in Mexico. (Docket Entry No. 104 at 5). Setting aside the fact that documents of nonparties are not at issue here, CFEi alleges that the documents it seeks primarily originated in the United States. (Docket Entry No. 96 at 9). At most, this factor is neutral.

Third-party discovery may provide some of the documents requested, but the "[d]efendants' own notes, personal records, and personal emails are likely available only from [d]efendants." (*Id.*). The final factor, the extent to which the request affects important interests of the involved jurisdictions, is generally key. *2M Asset Mgmt., LLC*, 2007 WL 666987, at *3. Turrent, Gutiérrez, and JG Energy urge that "Mexico's interests far outweigh U.S. interests." (Docket Entry No. 104 at 5). They point to *Madanes*, in which the court applied a similar, foreign-state's privilege against self-incrimination on the basis that "this country has little stake in overriding a foreign law privilege that closely parallels a right under the United States Constitution." *Madanes*, 186 F.R.D. at 286.

The court has discretion over which test to apply. If the court follows the first approach, based on where the documents originated, the court would order production of the documents under a protective order that accommodates the interests of both sides and limits the dissemination and use of the information. If the court follows the second approach, it would recognize Mexico's right against self-incrimination as applied to a corporation's document production under principles of comity. Turrent, Gutiérrez, and JG Energy argue that under Mexican law, they should not have to produce any such inculpatory documents. But in the case they primarily cite to support

18

recognizing a foreign right to protection against self-incrimination, the court still ordered production under a protective order. *Madanes*, 186 F.R.D. at 287 ("It is appropriate for courts to fashion protective orders in order to accommodate the conflicting needs of the party seeking discovery and the party asserting the privilege against self-incrimination.").

This court is not persuaded that Mexican law against compelling a corporation to produce incriminating information should be recognized in this proceeding, given the United States's relationship to the communications in dispute. However, the court need not resolve this issue, because even if a privilege under Mexican law is recognized, it is given effect by requiring Turrent, Gutiérrez, and JG Energy to produce documents under a protective order. The parties may designate documents they believe are protected by the right against self-incrimination as confidential and for attorney's eyes only.

*In camera* review, which the defendants urge, (Docket Entry No. 104 at 6), is not necessary. *See Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 21 (N.D. Tex. 2021) ("Conducting an in camera review is not appropriate merely because a party requests the district court undertake the endeavor." (internal quotation omitted)). "[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information[.]" *United States v. Zolin*, 491 U.S. 554, 572 (1989). The burden on the court from *in camera* review of the documents sought in discovery will be high, made more onerous by the likelihood that some of the documents are in Spanish. A protective order can accomplish the same goal of preventing the disclosure or use of the disputed documents and communications in criminal proceedings pending in Mexico.

## IV. Conclusion

The defendants' motion to dismiss for *forum non conveniens*, (Docket Entry No. 57), is denied. This court rejects defendants' request not to produce documents based on Mexican law against self-incrimination, and orders production of documents under a protective order. The parties must submit a joint protective order no later than October 26, 2023.

SIGNED on October 12, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge