United States District Court
Southern District of Texas
ENTERED
August 08, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CFE INTERNATIONAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-22-3385 |
| | § | |
| GUILLERMO TURRENT SCHNAAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case involves a dispute between CFE International LLC ("CFEi") and its former Chief Executive Officer, Guillermo Turrent Schnaas, and its former Chief Operating Officer, Javier Gutiérrez Becerril. CFEi has sued Turrent and Gutiérrez for breach of contract and breach of fiduciary duty related to several oil and gas ventures that CFEi entered into during their time as officers. (Docket Entry No. 51). CFEi alleges that, due to "rampant corruption, cronyism, and conflicts of interest," Turrent and Gutiérrez awarded billions of dollars of "unnecessary and overpriced" natural gas and pipeline contracts to WhiteWater Midstream LLC ("WWM"). (*Id.* ¶ 1). CFEi alleges that Turrent and Gutiérrez had "long-standing personal and business relationships" with WWM and its executives, and that awarding these contracts benefitted WWM and its executives while inflicting "substantial, long-lasting harm" on CFEi and the Mexican people. (*Id.*). CFEi's sole member is CFE, the state-owned electrical utility of Mexico. (*Id.* ¶ 2).

Turrent and Gutiérrez have moved to exclude the following opinions of Richard K. Pastore, one of CFEi's experts:

1. All Pastore's opinions about whether allegedly undisclosed information would have been relevant to the Board of Directors of CFEi and CFE, as set forth in Section VI of the Pastore Report;

2. All Pastore's opinions that Turrent and Guttiérez's actions advanced the interests of WWM ahead of the best interests of CFEi, as set forth in Section VII of the Pastore Report;
3. To the extent not already excluded, all Pastore's opinions regarding Turrent and Guttiérez's relationship with WWM as set forth in Section VII.A of the Pastore Report.

(Docket Entry No. 262 at 4). Turrent and Gutiérrez argue that Rule 702 requires excluding these opinions. (*Id.* at 5 (citing FED. R. EVID. 702)). Each of these challenges is analyzed below under the standards for admitting expert testimony. Because the court finds none of the challenges persuasive, Turrent and Gutiérrez's motion to exclude is denied.

## I. The Legal Standard

"The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 592 (1993).

To be relevant, expert testimony must "assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Oper. Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 519 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)). Reliability concerns "whether the reasoning or methodology underlying the testimony is scientifically valid." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002)). "To be reliable, expert testimony must be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *In re: Taxotere*, 26 F.4th at 268 (cleaned up).

## II. Analysis

Turrent and Guttiérez make three arguments for exclusion. First, they argue that Pastore's opinions about what information should have been disclosed to the Board of Directors of CFE and CFEi are speculative and conclusory. (Docket Entry No. 262 at 5). Second, they argue that Pastore's opinions about the best interests of WWM and CFEi are improper legal opinions. (*Id.* at 6). Finally, they argue that Pastore's opinions about their "unusually close relationships" with WWM and the resulting conflicts of interest do not assist the trier of fact. (*Id.* at 7). The court addresses these arguments using the Rule 702 framework.

### A. Specialized Knowledge that is Helpful to the Trier of Fact

Turrent and Gutiérrez do not generally dispute Pastore's extensive relevant experience and expertise in the natural gas industry. (*See generally* Docket Entry No. 262); *see, e.g.*, *Sierra Enters. Inc. v. SWO & ISM, LLC*, 264 F. Supp. 3d 826, 835 (W.D. Ky. 2017) ("As an initial matter, Lewis Oil's motion to exclude Plaintiffs' expert witness does not contest that Callicotte is qualified to opine on the standards, customs, and practices in the oil and gas industry."). Pastore has more than 33 years of experience in the energy industry, including gathering, presenting, and evaluating

the information needed to prepare, compete for, and award natural gas contracts. (Docket Entry No. 278-2 ¶ 2). He has personal experience in Requests for Offers ("RFOs") used to solicit bids for natural gas contracts. (Docket Entry No. 287-3 at 10, 11, 16, 28). His experience includes both drafting RFOs and helping clients in the industry formulate and evaluate RFOs. (*Id.* at 16). His experience also includes natural gas contracts in the geographic areas at issue in this case—West and South Texas—as well as experience with pipeline projects and with foreign public entities. (*Id.* at 5, 6, 8, 15, 20).

Turrent and Gutiérrez argue that Pastore does not have specific experience in evaluating conflicts of interest. (Docket Entry No. 262 at 7). But Pastore's opinion that Turrent and Gutiérrez had such unusually close relationships with WWM's executives as to give rise to a conflict of interest (and that the undisclosed information about these close relationships would have been relevant to CFEi's and CFE's directors) is supported by Pastore's specialized knowledge about the industry and its accepted practices for bidding and contracting for natural gas. As CFEi explains, Pastore's extensive experience with procurement, portfolio management, and evaluating RFOs, among other industry experience, necessarily includes viewing the quality and nature of potential counterparties and their relationships. (Docket Entry No. 278 at 13).

Pastore testified that his experience in trying to determine whether there are conflicts of interest and how to deal with them is part of his experience with RFOs. (Docket Entry No. 278-3 at 28). He testified that, based on his experience, "it is part of normal industry practice that conflicts of interest be identified so that the buyer can take appropriate measures, and apply any necessary safeguards and remedies, to avoid undermining the procurement process." (Docket Entry No. 278-2 ¶ 31). He further testified—following a discussion of procurement standards with which he has extensive experience—that "[g]iven the substantial size of CFEi's contracts in West

Texas and South Texas between 2016 and 2018 (including in the Agreements), as well as CFEi's prime role in procuring gas for a national public utility, I would expert directors and officers to be particularly attuned to disclosing potential and actual conflicts." (*Id.* at 22).

Pastore's specialized knowledge will clearly be helpful to the finder of fact. His opinions on conflicts of interest are not speculative and do not require individual interviews with the directors themselves.[1] "Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge or observation." *Daubert*, 509 U.S. at 592. "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* Whether the close relationships are acceptable or standard industry practice, whether they presented conflicts of interests, whether Turrent and Gutiérrez had a duty to disclose those relationships and similar information to CFE's and CFEi's directors, and whether that disclosure would have been relevant to the directors' decision-making process about the contracts at issue, are not subjective inquiries. Instead, the standard Pastore is applying is an objective one, based on extensive experience in the industry.

The subject matter at issue is neither intuitive nor within the ordinary understanding of laypersons. Pastore is amply qualified to opine on whether Turrent and Gutiérrez had conflicts of interest and whether the undisclosed information about those conflicts would have been important to the board of directors considering the proposed contracts and commitments.

**B. Based on Sufficient Facts or Data**

[1] The Delaware Supreme Court has explained that the relevant standard for determining whether a member would have considered undisclosed information to be important is an objective one based on the views of a "reasonable board member." *See, e.g.*, *In re Oracle Corp. Derivative Litig*., 339 A.3d 1, 23 (Del. 2025).

Pastore's opinions about Turrent and Gutiérrez's conflicts of interest and disclosure obligations (and how their actions affected CFEi) are based on his deep expertise and decades of experience in the natural gas industry, including with RFOs. As noted above, Pastore did not need to personally interview the directors of CFEi and CFE to opine that they would have found Turrent and Gutiérrez's undisclosed relationships and transactions relevant and important to evaluating the natural gas contracts at issue. Pastore had ample information and expertise to opine that Turrent and Gutiérrez had undisclosed conflicts of interest and that objective industry standards required disclosure. In addition, his (related) opinion that Turrent and Gutiérrez procured gas in a way that advanced the interests of WWM ahead of those of CFEi is based on extensive qualitative and quantitative analysis. CFEi comprehensively lists the information and analysis that Pastore used to reach this particular opinion. In summary, Pastore:

- Analyzed gas and liquidity prices in West Texas at the time the agreements with WWM for the Waha Connector were entered into, and used this information as well as the cost of the Waha Connector to conclude that CFEi "would not have needed" the Waha Connector to produce sufficient gas, but that Turrent and Gutiérrez nonetheless committed CFEi to paying for its full capacity until 2041;
- Explained that WWM's access to resources and information such as CFEi's trading and portfolio data gave it unique advantages "compared to the rest of the market";
- Identified the "reserve-based supply" term in the RFOs as atypical and explained how this term gave WWM a competitive advantage while potentially narrowing CFEi's bidder pool to its disadvantage;
- Used an industry-specific methodology to standardize and compare 41 diverse offers in the West Texas Supply Contract RFO to conclude that the agreed-upon price gave WWM an "uncommon opportunity" to "profit at CFEi's expense";
- Assessed pricing indices and basis risk to explain how using a specific Louisiana pricing index for the South Texas Supply Contract "introduce[d] massive risk into [CFEi's] portfolio without any logical reason"; and
- Performed a detailed analysis of demand projections and market conditions to arrive at the opinion that Turrent and Gutiérrez procured excess gas in South Texas and conducted various comparative assessments to show that WWM benefitted from the excess contacting of supply in South Texas at CFEi's expense.

(Docket Entry No. 278 at 19–20 (citing Docket Entry No. 278-2 ¶¶ 73–78, 84, 99, 107, 110, 131–35, 167–68, 201; Docket Entry No. 278-3 at 31)).

The record shows that Pastore had an ample factual basis for all of his opinions.

**C. Reliable Principles and Methods Reliably Applied to the Facts of this Case**

The record also shows that Pastore used and applied reliable principles and methods to the facts of this case. His analysis was based on the commercial terms of the contracts at issue, his knowledge of industry practices and standards, and his own deep and long experience with gas procurement contracts and the procurement process, including RFOs. (*See generally* Docket Entry No. 278-2 (Pastore declaration and expert report)).

As noted above, Pastore applied the method used in the industry to "standardize[] and compare[] 41 diverse offers in the West Texas Supply Contract RFO—converting offers with different tenors, delivery points, and variable charges into a common all-in price per MMBtu—and found the agreed-upon price gave WWM an 'uncommon opportunity' to profit at CFEi's expense." (Docket Entry No. 278 at 19). And, as also noted above, he "performed a detailed analysis of demand projections and market conditions to arrive at the opinion that Defendants procured excess gas in South Texas, and conducted a comparative assessment of CFEi's three long-term contracts in South Texas—accounting for different price terms, optionality, and transportation costs, all of which require deep industry expertise to assess—and a comparison of WWM's offer to market prices, to show that WWM benefited from the excess contracting of supply in South Texas at CFEi's expense." (*Id.* at 19–20). Pastore used reliable principles and methods and reliably applied them to the facts before him.

Turrent and Gutiérrez attack one of Pastore's opinions—that they "procured gas in a way that advanced the interests of WWM ahead of the best interests of CFEi"—as an inadmissible legal opinion because Pastore is "really opining" that they breached their fiduciary duties. (Docket Entry No. 262 at 6). Pastore's opinions about the conflicts of interest that the defendants operated

under and that WWM benefited from are not legal conclusions, but rather a description of the facts surrounding their relationships with the WWM executives, the ways in which those relationships deviated from accepted industry practices and standards, and the effects of the contracts at issue upon CFEi. "[T]he court notes that industry-specific experts . . . are entitled to rely on their experience to form opinions as to whether actions taken are a gross deviation from the standard practices observed in their field." *Sierra Enters., Inc.*, 264 F. Supp. 3d at 836; *see also Butler v. BNSF Ry. Co.*, No. 1:22-CV-00367-MJT, 2024 WL 2735020, at *5 (E.D. Tex. Mar. 26, 2024) (declining to allow an expert to directly testify as to any legal conclusions but allowing him to testify, "for example, by explaining to the jury what industry standards are and how, in his opinion, Defendant's actions failed to meet those standards"); *United States v. Hawley*, 562 F. Supp. 2d 1017, 1040 (N.D. Iowa 2008) ("[A]n expert may testify that factual circumstances demonstrate that a person did not meet a legal duty that is otherwise defined by the court."); *Indian Harbor Ins. Co. v. KB Lone Star Inc.*, Civ. Action No. H-11-1826, 2012 WL 12893659, at *3 (S.D. Tex. June 12, 2012). And, as CFEi points out, Pastore's opinion that the defendants put their own interests and the interests of WWM ahead of CFEi's interest is no more of a legal conclusion than is the opinion of the defendants' industry expert, Kevin Beasley, that the defendants did not put WWM's interests ahead of CFEi's. (Docket Entry No. 278 at 21 (citing Docket Entry No. 278-5 ¶ 14)).

Turrent and Gutiérrez's motion to exclude certain opinions of Richard K. Pastore, (Docket Entry No. 262), is denied.

SIGNED on August 7, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge