United States District Court
Southern District of Texas
**ENTERED**
August 10, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CFE INTERNATIONAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-22-3385 |
| | § | |
| GUILLERMO TURRENT SCHNAAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

CFE International LLC ("CFEi") has sued its former Chief Executive Officer, Guillermo Turrent Schnaas, and former Chief Operating Officer, Javier Gutiérrez Becerril, asserting claims for breach of contract and breach of fiduciary duty. CFEi alleges that between 2012 and 2018, Turrent and Gutiérrez entered into several oil and gas agreements that were infected by "rampant corruption, cronyism, and conflicts of interest." (Docket Entry No. 51). Turrent and Gutiérrez have moved for summary judgment on the ground that CFEi cannot recover any of the damages it seeks. (Docket Entry No. 264). Alternatively, they move for summary judgment that CFEi is not entitled to certain categories of damages that it seeks. (*Id.* at 8).

Based on the pleadings, the motion, the record, oral argument, and the applicable law, the court denies the motion for summary judgment on both grounds. The reasons for this ruling are below.

**I. Background**

CFEi is a Delaware LLC. (Docket Entry No. 277-12 at 2). CFEi's sole member is CFE, the state-owned electric utility of Mexico. (*Id.* at 27). CFEi has a "sister company," CFEnergia

S.A. de C.V. ("CFEn"). (Docket Entry No. 277-2 at 14). CFEi imposed Delaware's fiduciary duty of loyalty and care onto its officers and imposed "additional duties and responsibilities" on its directors. (Docket Entry No. 277-12 at 3, 8). When CFEi was formed in 2015, Turrent served as the first CEO and Gutiérrez as the first COO. (*Id.* at 29). Turrent also served as a member of CFEi's Board of Directors. (*Id.* at at 28). Turrent and Gutiérrez had the same roles at CFEn. (Docket Entry No. 287-2 at 14).

CFEi has sued Turrent and Gutiérrez for breach of fiduciary duty and breach of contract. (Docket Entry No. 51 ¶¶ 134–154). CFEi alleges that between 2012 and 2014, Turrent and Gutiérrez "engaged in multiple, undisclosed business ventures." (Docket Entry No. 51 ¶ 41).[1] In these ventures, Turrent and Gutiérrez allegedly "awarded billions of dollars of unnecessary and overpriced natural gas supply and pipeline contracts to WhiteWater Midstream LLC (collectively with its affiliates, 'WWM')," benefitting WWM and its executives, including WWM's co-founder and senior executive Matthew Calhoun, with whom Turrent and Gutiérrez had long-standing personal and business relationships. (*Id.* ¶¶ 1, 3, 118). Turrent and Gutiérrez "never disclosed" to the CFE or CFEi Boards of Directors their ties and dealings with Calhoun, or that Gutiérrez's consulting business (which was linked to Calhoun's address) received over $250,000 in income while Gutiérrez served as CFEi's COO. (*Id.* ¶ 50).

In 2016, Turrent and Gutiérrez awarded the West Texas Supply Agreement and the Waha Connector Agreements to WWM. (*Id.* ¶ 52). CFEi alleges that Turrent and Gutiérrez "failed to conduct fair, arm's-length bidding processes" and steered the award of these projects to WWM despite deficiencies in its proposals. (*Id.* ¶ 53). Turrent and Gutiérrez allegedly hid those

[1] Because Turrent and Gutiérrez challenge only damages in their motion for summary judgment rather than the allegations about their underlying conduct, the court summarizes the remaining facts as alleged in the first amended complaint.

deficiencies by "creating a false record of fair and competitive bidding," awarding the projects to WWM "even though they offered terms less favorable to CFEi" than bids from other, more established companies. (*Id.*). CFEi alleges that the West Texas Agreements, which called for WWM to supply CFEi with up to 1 Bcf of natural gas every day for 15 years beginning in 2019, "have significantly harmed the financial interests of CFEi and the CFE Group." (*Id.* ¶¶ 54, 55). CFEi also alleges that the Waha Connector Agreements "were a significant unnecessary expense for CFEi." (*Id.* ¶ 78). In 2017, Turrent and Gutiérrez awarded WMM another contract, the South Texas Supply Agreement, which allegedly will cost CFEi "billions of dollars" over the lifetime of the contract and is contrary to CFEi's interests. (*Id.* ¶¶ 101, 103).

CFEi alleges that these breaches of fiduciary duty and breaches of contract "inflicted substantial, long-lasting harm on CFEi." (*Id.* ¶ 1). CFEi alleges that "[t]he economic toll inflicted on the CFE Group"—which includes CFE and CFEn—"is estimated to be at least in the hundreds of millions of dollars, and the harm to CFEi itself more than $1,000,000." (*Id.* ¶ 8). CFEi seeks over $1,000,000 in damages; the disgorgement of wages, bonuses, other compensation, and any personal gains Turrent and Gutiérrez received from their alleged corrupt acts; and exemplary damages. (*Id.* ¶ 42).

Turrent and Gutiérrez have moved for summary judgment.[2] (Docket Entry No. 264). They generally do not contest the factual allegations pleaded as the basis for liability in the first amended

[2] In their reply brief, Gutierréz and Turrent raise a variety of evidentiary objections in cursory fashion. (Docket Entry No. 289 at 17). CFEi addressed these objections in a sur-reply. (Docket Entry No. 294). The court will not address the objections (and did not address them at the motion hearing), as they "do not address with any specificity why [Gutiérrez and Turrent] believe[] the evidence to constitute hearsay" or why the evidence is otherwise improper. *Bushidopro, C.A. v. Nippon Pillar Corp. of Am., Inc.*, No. 4:19-CV-4249, 2021 WL 3660766, at *2 (S.D. Tex. Mar. 22, 2021). "Broad-based, non-specific objections are almost impossible to assess on their merits[.]" *In re Adkins Supply, Inc.*, 555 B.R. 579, 587 (Bankr. N.D. Tex. 2016) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)). Gutiérrez and Turrent are "permitted to raise the objections again at trial if [they do] so with the required specificity." *Bushidopro*,

complaint, but challenge only damages. The crux of their argument is that because CFEi is a "mere 'cost center'" for CFEn and CFE, CFEi cannot prove that it suffered any damages from their alleged conduct. (*Id.* at 7). "In other words," because either CFE or CFEn makes CFEi whole for costs, "CFEi could suffer no harm if those costs were (allegedly) higher than they might otherwise have been." (*Id.*). Turrent and Gutiérrez ask the court to dismiss all claims with prejudice or, alternatively, hold that CFEi is not entitled to the loss of cash flow testified to by CFEi's damages expert, Professor Karen Hopper Wruck.[3] CFEi has responded, arguing that courts have repeatedly rejected similar "pass-through" arguments; that the motion "fundamentally misunderstands" the nature of the damages the defendants' conduct caused CFEi; and that Professor Wruck offers a "well-established" model of assessing the damages that Turrent and Gutiérrez inflicted on CFEi. (Docket Entry No. 277 at 8–9).

## II. The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the

---

2021 WL 3660766, at *2 (citing FED. R. EVID. 103(a)). If they do so, the court will consider CFEi's rebuttals at that time.

[3] Gutiérrez and Turrent also initially moved for summary judgment to exclude disgorgement as a category of damages but later withdrew their arguments on disgorgement. (Docket Entry No. 319). Although the withdrawal on disgorgement effectively conceded that, at a minimum, the breach of fiduciary duty claim would proceed, their notice of withdrawal did not explicitly make this concession, nor was this concession clearly addressed at the motion hearing. This Memorandum and Opinion proceeds as if the defendants are still requesting dismissal in full on both claims.

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San*

*Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

**III. Analysis**

Delaware law governs both of CFEi's claims. (Docket Entry No. 112 at 12–13). "Under Delaware law, a claim for breach of fiduciary duty 'has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty.'" *Kulak v. On*, C.A. No. 2023-0011-KSJM, 2026 WL 1122367, at *9 (Del. Ch. Apr. 24, 2026) (quoting *HOMF II Inv. Corp. v. Altenberg*, C.A. No. 2017-0293-JTL, 2020 WL 2529806, at *43 (Del. Ch. May 19, 2020)). "A court may award nominal damages when a breach does not warrant a meaningful remedy." *Arxada Holdings NA Inc. v. Harvey*, 351 A.3d 519, 569–70 (Del. Ch. 2026). "A breach of fiduciary action is not an action for breach of contract where the plaintiff can only recover its own loss; instead, the fiduciary can be forced to disgorge its gain even when the gain did not come at the beneficiary's expense." *Id.* at 574 (quoting *Ban v. Manheim*, 339 A.3d 41, 77 (Del. Ch. 2025)).

Under Delaware law, "[t]o prevail on a breach-of-contract claim, one must show: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Jiggy Puzzles, LLC v. Steelhead Acquisition EE, Inc.*, C.A. No. N24C-10-212 PRW, 2026 WL 465112, at *5 (Del. Super. Ct. Feb. 18, 2026) (citing *VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003)). A non-breaching party "is entitled to recover 'damages that arise naturally from

the breach or that were reasonably foreseeable at the time the contract was made.'" *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 635 A.2d 254, 264–65 (Del. 1995)). Damages for breach of contract "are designed to place the injured party in an action for breach of contract in the same place he would have been if the contract had been performed." *Id.* (quoting *Huggins v. B. Gary Scott, Inc.*, C.A. No. 88C-OC-80, 1992 WL 179482, (Del. Super. Ct. June 25, 1992)).

The court denies Turrent and Gutiérrez's motion for summary judgment and request for dismissal, with prejudice, of the whole case. The court also denies Turrent and Gutiérrez's alternative motion for partial summary judgment to exclude Professor Wruck's loss of cash flow estimation of damages.

The court first denies the motion for summary judgment on the basis that CFEi suffered no actual damages because nominal damages are available for both breach of fiduciary duty and breach of contract claims under Delaware law. *See, e.g.*, *Macrophage Therapeutics, Inc. v. Goldberg*, No. CV 2019-0137-JRS, 2021 WL 2582967, at *19 (Del. Ch. June 23, 2021) ("In a fiduciary duty action, 'plaintiffs need not plead (or prove at trial) that they have been injured as an element of their claim.' In the absence of specific proof of a specific injury, the court will issue a declaration that the defendant breached his fiduciary duties and award nominal damages." (quoting *Orban v. Field*, Civ. A. No. 12820, 1993 WL 547187, at *5 (Del. Ch. Dec. 30, 1993))); *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 471 (Del. Ch. 2024) ("Under Delaware law, '[a] party need not plead cognizable damages as an element of a claim for breach of contract because the court can vindicate a breach of contract through an award of nominal damages.'" (quoting *Cygnus Opp. Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 456 (Del. Ch. 2023))). CFEi does not have to present a contract damages theory at all for a court to

award nominal damages under Delaware law. *See GB-SP Holdings, LLC v. Walker*, C.A. No. 9413-VCF, 2024 WL 4799490, at *23–24 (Del. Ch. Nov. 15, 2024).

Second, Turrent and Gutiérrez have withdrawn their request for summary judgment to exclude disgorgement as a category of damages. (Docket Entry No. 319). Delaware law is clear that disgorgement is a proper remedy for a breach of fiduciary duty claim even if CFEi was not the source of funds to be disgorged. "[T]he court must account for the importance of forcing a faithless fiduciary to disgorge the benefits generated by its misconduct . . . the fiduciary can be forced to disgorge its gain even when the gain did not come at the beneficiary's expense." *Ban*, 339 A.3d at 77. "Even if the corporation did not suffer actual harm, equity requires disgorgement." *Arxada Holdings NA Inc.*, 351 A.3d at 574; *accord Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 860 (Del. Ch. 2022) ("[A] beneficiary can force a fiduciary to disgorge the benefits that the fiduciary received without a showing of harm to the beneficiary."). "The purpose of disgorgement is to deter 'acts of conscious wrongdoing and breaches of a fiduciary's duty of loyalty . . . by requiring the wrongdoer to disgorge any profit made as a result of such wrongful conduct.'" *Avande, Inc. v. Evans*, C.A. No. 2018-0203-AGB, 2019 WL 3800168, at *18 (Del. Ch. Aug. 13, 2019) (quoting *Pike v. Commodore Motel Corp.*, 1986 WL 13007, at *3 (Del. Ch. Nov. 14, 1986)).

The court also denies Turrent and Gutiérrez's motion for summary judgment based on their argument that CFEi's "pass-through" arrangement precludes awarding damages. As the Supreme Court explained in *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." 245 U.S. 531, 533 (1918) (Holmes, J.). The Court was considering a pass-through arrangement that allowed the plaintiffs to pass on the damages they sustained by paying an unreasonably high railroad charge. The Court rejected the argument that a pass-through arrangement (allowing the higher costs the plaintiffs suffered to

be passed on to their purchasers) precluded finding damages. "The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events." *Id.* at 534. As CFEi correctly points out, *Darnell-Taenzer*'s general principle that the wrongdoer should pay the party it directly harmed regardless of subsequent events "prevails throughout the law." (Docket Entry No. 277 at 17 (quoting *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985) (Easterbrook, J.)).

As Judge Easterbook explained in *Carter*:

> A firm that catches an employee with its hand in the till is entitled to recover the stolen money in court, even though it may also "recover" the money by withholding a bonus and may have offset the loss by reducing the employee's salary after suspecting a theft. A pedestrian is entitled to recover for loss caused by being run over by a speeding motorist, even though the pedestrian also has insurance. The "collateral benefit" rule of tort law rests on the belief that the wrongdoer should be made to pay—the better to deter like conduct—whether or not the victim has providently supplied another source of compensation, unless the supplier of the compensation has a subrogation clause.

*Carter*, 777 F.2d at 1175.[4]

The Fifth Circuit has held that "pass-through" defenses are improper (and inapplicable) in breach of contract cases. In *In re Liljeberg Enters., Inc.*, the Fifth Circuit concluded that the district court erred as a matter of law by failing to award Lifemark overcharges from certain flush kits. 304 F.3d 410, 467 (5th Cir. 2002). The Fifth Circuit held that "[r]egardless of whether Lifemark tripled the charges from Liljeberg Enterprises in billings its patients, we concluded that the district court's 'pass-through' reasoning is without merit." *Id.* at 467. The Fifth Circuit soundly rejected

[4] CFEi also explains that the principle of *Darnell-Taenzer* is "reflected in the well-established collateral source rule, which precludes a tortfeasor from obtaining the benefit of payments to the injured party from those other than the tortfeasor." (Docket Entry No. 277 at 17–18 (citing *Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th] 2004, pet. denied); *Est. of. Farrell v. Gordon*, 770 A.2d 517, 520 (Del. 2001)).

the argument the Lifemark "suffered no loss" (and in fact profited)[5] by passing the overcharge onto its patients. *Id.*

As CFEi notes, (Docket Entry No. 277 at 19), this case is similar to a case from the Ninth Circuit, *Oregon Metallurgical Corp. v. Burlington Northern & Santa Fe Railway Co.*, 101 F. App'x 184 (9th Cir. 2004). In *Oregon Metallurgical Corp.*, the district court had granted summary judgment to the defendants, holding that the plaintiff had not suffered actual damages because it had sold the product at issue (titanium sponge) to a sister corporation at cost.[6] 101 F. App'x at 185. The Ninth Circuit first held that the district court had misunderstood the plaintiff's evidence of damages, which was that "it was damaged by the loss of its ability to produce as much titanium sponge as it desired due to the late shipments of raw material," which alone was sufficient evidence of damage to withstand summary judgment. *Id*. at 185–86. The Ninth Circuit then held that, "[i]n addition," the district court erred in applying a pass-through defense, noting that while this defense "might" apply in limited circumstances in the antitrust context, it "ordinarily is *not* recognized." *Id.* at 186. The Ninth Circuit concluded that *Darnell-Taenzer's* approach of not "'go[ing] beyond the first step'" was the approach that "should apply here." *Id.* at 186 (quoting *Darnell-Taenzer*, 245 U.S. at 533). It then remanded for further proceedings. *Id.*

Turrent and Gutiérrez's pass-through argument is unpersuasive. The Supreme Court rejected the argument that a plaintiff able to pass its damages on to another entity is thereby precluded from recovery over a century ago, in *Darnell-Taenzer*. Accepting Turrent and

[5] To the extent that Turrent and Gutiérrez argued in their reply brief and at the motion hearing that CFEi was not harmed because it "consistently profited" on its sales to CFEn, (Docket Entry No. 289 at 8), *In re Liljeberg Enters., Inc.* rejects that argument.

[6] In their reply brief and at the motion hearing, the defendants also reiterated their argument that the pass-through defense scenario only applies when the cost is passed on to an unrelated third parties. (*See* Docket Entry No. 289 at 11–12). *Oregon Metallurgical*, however, involved a "sister" corporation. In Gutiérrez's own words, CFEn is similarly a "sister" company to CFEi. (Docket Entry No. 277-2 at 14).

Gutiérrez's argument would lead to the untenable result that they could flagrantly breach their fiduciary duties to, and contracts with, CFEi, and CFEi would never be able to recover.[7] (Docket Entry No. 277 at 21). The defendants implicitly argue in their reply brief that CFEn and CFE should have been the parties suing, not CFEi. (Docket Entry No. 289 at 6 ("CFE and CFEn chose not to sue")). But as CFEi points out, Turrent and Gutiérrez's motion for summary judgment admitted that only CFEi standing to sue. (Docket Entry No. 264 at 17 ("A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined." (quoting *Tullett Prebon, PLC v. BGC Partners, Inc.*, No. CIV.A.09-5365 (SRC), 2010 WL 2545178, at *4 (D.N.J. June 18, 2010), *aff'd* 427 F. App'x 236 (3d Cir. 2011))). Turrent and Gutiérrez cannot create an escape hatch by simultaneously arguing that CFEn and CFE do not have standing to sue and that CFEi cannot sue because it has suffered no harm. Just as the "first step" approach of *Darnell-Taenzer* is well-established, "[t]he other part of Justice Holmes's 'tendency'—that the indirectly injured party may not sue—is equally well-established." *Carter*, 777 F.2d at 1175.[8]

---

[7] Their argument also assumes a level of permanence that does not exist. As CFEi pointed out in its briefing and reiterated at the motion hearing, the contracts between CFEi and CFEn are subject to amendment and provide each party with the ability to opt out after each month. (Docket Entry No. 277 at 20 & n.1).

[8] Although Turrent and Gutiérrez argue that because CFEi and CFEn operate on a "cost-plus" basis, CFEi suffered no damages, to the extent the "'cost-plus' contract" exception for pass-through defenses mentioned in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968) "might" exist, it is applicable only "in the context of a private action for damages under the antitrust laws." *Oregon Metallurgical Corp.*, 101 F. App'x at 186. This is not an antitrust case, and Turrent and Gutiérrez have not identified case law applying the "cost-plus" exception in similar circumstances. (*See generally* Docket Entry Nos. 264, 289). Courts have recognized that "the pre-existing cost-plus exception to *Hanover*, to the extent that it *ever* existed, today is so eviscerated that it is virtually non-existent." *City of Philadelphia v. Public Emps. Ben. Servs. Corp.*, 842 F. Supp. 827, 832 (E.D. Pa. 1994). Turrent and Gutiérrez have also not shown that this is a qualifying cost-plus contract, which generally would require CFEi's agreement with CFEn to involve a "fixed quantity" of gas. *See Winn-Dixie Stores, Inc. v. E. Mushroom Marketing Cooperative*, Civ. Action No. 15-6480, 2020 WL 5211035, at *6 (E.D. Pa. Sep. 1, 2020) ("Moreover, Bi-Lo is incorrect when it contends that it qualifies for the cost-plus exception even though it did not contract with C&S for a fixed

Just as the defendants in *Oregon Metallurgical* failed to understand the nature of the damages sought in that case, Turrent and Gutiérrez appear to misunderstand (or ignore) Professor Wruck's analysis and opinion on the damages that CFEi seeks. Professor Wruck measured the damages CFEi suffered as a result of the defendants' breaches as "the difference between the value of CFEi's supply and transportation portfolio in the actual world (in which it overpaid for and overpurchased gas) and the but-for world (in which it did not)." (Docket Entry No. 277 at 23 (citing Docket Entry No. 277-13 ¶ 98)). Professor Wruck found that because, "[a]s a cost-center style business entity, CFEi's value is determined by the value of its contracting activities," CFEi's sale value would depend "on the value of its portfolio of supply and transportation contracts and the overall efficiency of its procurement strategy." (Docket Entry No. 277-13 ¶ 95). "As a result, contracts struck at unfavorable terms relative to the market will have a negative impact on CFEi's value." (*Id.*). In other words, if CFE were to abandon its current natural gas strategy and try to sell CFEi in the future, CFEi's sale value would depend on the value of this portfolio and whether its contracts were priced below, at, or above market. (Docket Entry No. 277 at 24).

Professor Wruck's opinion does not "create harm where none exists," as Turrent and Gutiérrez allege. (Docket Entry No. 289 at 9). Instead, the opinion explains and quantifies the damages a cost-center-style business like CFEi can and allegedly did incur. The opinion is backed by Professor Wruck's undisputed academic credentials and expertise and her persuasive explanation of her approach and conclusions. (*See generally* Docket Entry No. 277-13). Her explanation of the harm that CFEi experienced as a cost-center business is an independently sufficient reason to reject the defendants' request for summary judgment in full. *See Oregon*

---

quantity of mushrooms."). In sum, Gutiérrez and Turrent have provided no basis for the court to consider applying this seemingly non-existent exception to this case.

*Metallurgical Corp.*, 101 F. App'x at 185–86 (noting that, even aside from the issue of the pass-through defense, the plaintiff's evidence "that it was damaged by the loss of its ability to produce as much titanium sponge as it desired due to the late shipments of raw material" was "sufficient evidence of damage to withstand summary judgment" and "[t]he measure of this damage is a question of fact to be resolved at trial").

Turrent and Gutiérrez highlight disagreements between Professor Wruck and their own expert, (*see, e.g.*, Docket Entry No. 264 at 18), but those disagreements are not a basis for granting summary judgment either in full or in part. *See, e.g.*, *Petrobras Am., Inc. v. Vicinary Cadenas, S.A.*, Civ. Action No. H-12-888, 2019 WL 13060286, at *6 (S.D. Tex. Dec. 10, 2019) ("A dispute between expert witnesses is a matter left for the jury's resolution."); *City of Garland v. Burnett*, No. 3:04-CV-1378, 2005 WL 491521, at *10 n.15 (N.D. Tex. Mar. 2, 2005) ("In support of its contentions that Mitchell's FMV methodology is flawed, Plaintiff cites to its own expert report. Unsurprisingly, disagreement is found. However, such discordance does not establish success for either party. Rather, tension of opinion supports the posture of this case. Moreover, it is the trier of fact, and not a matter of law, that judges the battle of the experts."). The defendants have not made a *Daubert* challenge to Professor Wruck's opinions[9] and have provided no persuasive basis for this court to exclude her loss of cash flow estimation of damages. For similar reasons, the court

[9] Notably, although their arguments are somewhat implicitly framed as challenges to the reliability of expert testimony, Turrent and Gutiérrez did not make a formal *Daubert* challenge to Professor Wruck's testimony. In fact, they disclaimed any characterization of their challenge as a *Daubert* motion. (*See* Docket Entry No. 289 at 7 ("This is not a *Daubert* motion.")). But their challenges are functionally challenges to Professor Wruck's modeling and the reliability of her model. (*See, e.g.*, *id.* at 9 (challenging her use of a "but-for" model)). "The proper way to challenge an expert is through a *Daubert* motion under Rule 702" and Turrent and Gutiérrez "ha[ve] not done so." *Bama Cos., Inc. v. Stahlbush Island Farms, Inc.*, No. 18-CV-045-JFH-JFJ, 2024 WL 3086254, at *2 n.3 (N.D Okla. June 20, 2024). Relatedly, as CFEi correctly asserts, Turrent and Gutteriéz do not explain with any detail whatsoever, (*see* Docket Entry No. 264 at 20), why there was not sufficient information available for Professor Wruck to reliably calculate damages, another quasi-*Daubert* challenge to her analysis. (Docket Entry No. 277 at 25).

rejects Turrent and Gutiérrez's "causation" argument, which simply accuses Professor Wruck of using an overly abstract damages model. (Docket Entry No. 264 at 21–22). Regardless, as CFEi points out, "issues of causation are questions for the trier of fact" under Delaware law. (Docket Entry No. 277 at 27 (quoting *Active Day OH, Inc. v. Wehr*, C.A. No. N22C-08-064 SKR CCLD, 2024 WL 3201167, at *4 (Del. Super. Ct. June 27, 2024)).

There is no basis for this court to either (1) grant summary judgment in full on both claims and dismiss this entire case, or (2) grant Turrent and Gutiérrez's alternative request for summary judgment that CFEi is not entitled to loss of cash flow damages as estimated by Professor Wruck.

## IV. Conclusion

The court denies the motion for summary judgment. (Docket Entry No. 264). This case will proceed to trial.

SIGNED on August 10, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge