United States District Court
Southern District of Texas
**ENTERED**
August 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CFE INTERNATIONAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-22-3385 |
| | § | |
| GUILLERMO TURRENT SCHNAAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, CFE International LLC ("CFEi"), has filed a motion to compel one of the defendants, Javier Gutiérrez Becerill, to identify the persons or entities paying for his defense.[1] (Docket Entry Nos. 310, 311). CFEi has sued Gutiérrez and Guillermo Turrent Schnaas, both former CFEi executives, for breach of contract and breach of fiduciary duty related to, among other things, allegedly improperly steering billions of dollars' worth of unnecessary and overpriced contracts to WhiteWater Midstream LLC ("WWM"). (Docket Entry No. 51 ¶ 1). CFEi alleges that Turrent and Gutiérrez had long-standing personal and business relationships with WWM executives that they did not disclose to CFEi or CFE's Board of Directors. (*Id.* ¶ 37).

CFEi explains that Gutiérrez was initially represented in this lawsuit by counsel from Jordan, Lynch & Cancienne PLLC. (Docket Entry No. 311 at 5). In April 2025, Gutiérrez's counsel withdrew on the grounds that he could no longer pay them. (Docket Entry No. 227 at 1). Gutiérrez proceeded pro se for the next five months. In September 2025, on the eve of his

[1] Both defendants are represented by the same attorneys. (Docket Entry No. 248). CFEi's motion is directed only to Gutiérrez, however. (Docket Entry No. 310). The response brief was filed jointly by both defendants. (Docket Entry No. 323).

deposition as corporate representative for his consulting firm, JG Energy, Gutiérrez engaged his current law firm, Barnes & Thornburg. (Docket Entry No. 312-1 at 5). Gutiérrez testified at that deposition that he did not know who was paying Barnes & Thornburg to represent JG Energy. (*Id.*). In October 2025, Gutiérrez again testified that he did not know, and had not tried to learn, who was paying for his attorneys. (Docket Entry No. 312-2 at 4–5). In October 2025, Barnes & Thornburg also entered appearances for Turrent, who similarly does not know who is paying for this representation. (Docket Entry No. 248; Docket Entry No. 312–5 at 8). To date, Gutiérrez remains unaware of who is paying for his counsel. (Docket Entry No. 323 at 10).

The court grants the motion to compel. "Despite the absence of a disclosure requirement in the Federal Rules of Civil Procedure, federal judges can and do still obtain information about third-party litigation funding arrangements in cases filed in their courts."[2] *In re Depo-Provera*, Case No. 3:25-md-3140, 2025 WL 1860996, at *1 (N.D. Fla. July 1, 2025). "[T]he scope of

[2] There is "broad agreement that judges can require disclosure [of funding activity] in cases in which that seems warranted." *In Re Depo-Provera*, 2025 WL 1860996, at *1 n.2 (quoting Advisory Committee on Civil Rules, Agenda—Meeting of the Advisory Committee on Civil Rules 418 (Oct. 10, 2024), available at https://www.uscourts.gov/sites/default/files/2024-10_civil_rules_agenda_book_final_10-6.pdf). "District courts have 'broad discretion in all discovery matters.'" *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000)). In *In re Depo-Provera*, the court compelled disclosure of who paid for the legal representation under its inherent authority. In *Nunes v. Lizza*, No. 20-cv-4003-CJW, 2021 WL 7186264, at *3 (N.D. Iowa Oct. 26, 2021), the disclosure was under Rule 26. Regardless of the framework, the overall issue is whether the information is relevant. CFEi argues that the court should use its inherent authority to require identification of the funders because Gutiérrez has flouted this court's disclosure rules; disclosure is important to the central claims in this action; and the circumstances of the funding raise serious questions about the integrity of the proceedings (among other evidence, CFEi points to the defendants' suspicious withdrawal of their statements in support of their motion for summary judgment that they had received no benefits from the contracts, which were statements made under penalty of perjury and which were withdrawn shortly before Gutiérrez filed his response to this motion and more than a month after the summary judgment briefing concluded). (Docket Entry No. 330 at 4–5). The court agrees that it has the inherent authority to compel this information in this case. *See Producers Releasing Corp. de Cuba v. PRC Pictures, Inc.*, 176 F.2d 93, 95 (2d Cir. 1949) ("[I]t seems very reasonable to suppose that a court has inherent power to compel a party to produce, without the issuance of subpoena, documentary evidence within his control and known to be relevant."); *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 & n.34 (5th Cir. 1993). Gutiérrez has not argued an inability to learn the information, merely that he has not tried to do so.

permissible discovery is broader than the scope of admissibility." *Nunes v. Lizza*, No. 20-cv-4003-CJW, 2021 WL 7186264, at *3 (N.D. Iowa Oct. 26, 2021) (quoting *Kampfe v. Petsmart, Inc.*, 304 F.R.D. 554, 557 (N.D. Iowa 2015)). "Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." *Id.* (quoting *Kampfe*, 304 F.R.D. at 557). "The party resisting production of requested information bears the burden of establishing the lack of relevancy, unless that lack of relevancy is obvious." *Id.* (quoting *Kampfe*, 304 F.R.D. at 557).

CFEi provides three main arguments for why the information it requests is relevant. First, it argues that the identity of the unknown funders is relevant to the strength and nature of the relationships among Turrent, Gutiérrez, and third parties. (Docket Entry No. 311 at 9). Second, CFEi argues that the identity of the unknown funders is relevant to issues of witness credibility and bias. (*Id.* at 12). Third, CFEi argues that the identity of the funders is directly responsive to the "David versus Goliath" narrative that Guttiérez and Turrent have espoused in their briefing. (*Id.* at 14 (citing Docket Entry No. 68 at 2)). The defendants dispute that the information is relevant and argue that the court should deny the motion in full.[3] (*See generally* Docket Entry No. 323).

[3] The defendants also argue that the court should reject the motion as untimely. (Docket Entry No. 323 at 5–6). Whether to reject the motion based on untimeliness is, as the defendants acknowledge, within this court's discretion. (*Id.*). The court sees no "tactical choice" in CFEi's alleged delay in requesting this information in this long-pending case. The timeline demonstrates that (1) CFEi only learned of the funding issue after the close of the discovery deadline because the parties agreed to a deposition deadline after the close of fact discovery; and that (2) CFEi first requested this information approximately one month after the defendants filed their motion for summary judgment, in which they claimed, among other things, not to have received even any indirect personal benefits, making the relevance of this information more clear. (Docket Entry No. 312-6; *see* Docket Entry No. 264-27 ¶ 4). Nor does the court see how disclosing the source of funding creates an extra "litigation burden" sufficient to justify denying the motion, given that the information is both relevant and easily producible. (Docket Entry No. 323 at 7). The court rejects the request to deny the motion on the grounds of untimeliness.

The court concludes that the information is relevant under all three of CFEi's theories.[4] First, CFEi's breach of contract and breach of fiduciary duty claims are based in part on Gutiérrez and Turrent's financial and personal relationships with third parties. (Docket Entry No. 311 at 9). The claims against Turrent and Gutiérrez turn in part on undisclosed conflicts of interest from those relationships, whether Turrent and Gutiérrez committed wrongful acts that benefitted entities and individual in those relationships, and the extent of the benefits from their alleged improper conduct. As CFEi asserts, if an individual or entity associated with those third parties is paying for Gutiérrez's defense, that information bears on the strength and nature of Gutiérrez's relationship with that party and undermines Gutiérrez's arguments that he did not personally benefit from these relationships. (Docket Entry No. 277 at 9).

In *In re Grand Jury Proceedings No. 92-4*, the Fourth Circuit ordered the disclosure of the attorney fee records for the defendants.[5] 42 F.3d 876, 877 (4th Cir. 1994). The Fourth Circuit explained that "[s]imply as a matter of common sense . . . persons with virtually no assets who are suddenly able to afford a private criminal defense may have a source of funds that is less than wholly legitimate." *Id.* at 878–79. The Fourth Circuit found, among other things, that the existence of a patron paying the legal fees could "establish a significant link between the suspects and their patron," which would go directly to the issues of conspiracy or existence of a criminal enterprise. *Id.* at 879. In this case too, it is a "matter of common sense" that if a third party linked to WWM was paying for Gutiérrez's defense, that indicates relationships among the third party, WWM, and Gutiérrez, which in turn goes directly to (among other things) whether Gutiérrez

[4] The court addresses all three of CFEi's main theories, but they are alternative holdings. Any one of the three theories is alone a sufficient basis to order disclosure.

[5] Although the defendants protest that the reasoning behind criminal grand jury proceedings have little relevance to this civil inquiry, (Docket Entry No. 323 at 8), the court agrees with CFEi that "the distinction makes no difference at all," (Docket Entry No. 311 at 11). The same underlying logic applies.

breached his fiduciary duties to CFEi by failing to disclose these relationships when he and Turrent awarded the contracts at issue. The defendants have cited no authority in support of their argument that because the alleged breaches occurred a decade ago, who is paying for the litigation today is "not relevant." (Docket Entry No. 323 at 7–8). The opposite logic applies: if a third party related to WWM is paying for Gutiérrez's legal defense in this litigation years after the contracts were awarded, that supports an inference of a close relationship between Gutiérrez and the third party.

In addition, in support of the motion for summary judgment that Gutiérrez and Turrent filed, (Docket Entry No. 264), Gutiérrez provided a declaration stating that he had "not received any personal gains related to the specific contracts awarded by CFEi, including the agreements at issue in this lawsuit." (Docket Entry No. 264-27 ¶ 4). Turrent made a similar declaration. (Docket Entry No. 264-25 ¶ 5). If a third party who received a contract award or benefitted from such an award is helping fund Gutiérrez's lawyers in this case, these payments undercut an argument that Gutiérrez had not received personal benefits from the contracts at issue. Although the defendants argue that Gutiérrez's declaration was not meant to address litigation funding, his declaration was not that limited. (Docket Entry No. 323 at 9). Rather, Gutierrez testified that he never accepted a "direct[] *or* "indirect[]" thing of "value" in return for awarding a CFEi contract. (Docket Entry No. 264-27 ¶ 4). The defendants argue that this declaration meant only that Gutiérrez did not receive anything of value "in exchange" for awarding the contracts, (Docket Entry No. 323 at 9), but that reads the word "indirectly" out of the declaration.

The defendants also point to the fact that in their summary judgment briefing, they withdrew their challenge to the disgorgement remedy that CFEi seeks and withdrew those statements on personal benefits from their declarations. (Docket Entry No. 323 at 9; *see also* Docket Entry No. 319). But the question is what CFEi can, and will need to, prove at trial, not

what the defendants argued (or did not argue) at summary judgment. The court also notes that in withdrawing their arguments on disgorgement, the defendants explicitly stated that the withdrawal was with respect to the motion only and that they reserved the right to challenge CFEi's disgorgement claims later, including at trial. (Docket Entry No. 319 at 2). If the defendants again try to argue that they have received no personal gains (an argument they expressly reserved the right to re-assert at trial), it would be relevant to both their credibility and impeachment if the source of their litigation funding was a third party linked to one of the contracts. *See Nunes*, 2021 WL 7186264, at *4. The "unusual" circumstances surrounding the withdrawal of their statements (which occurred, as CFEi points out, within a week of filing their response brief opposing CFEi's motion to compel) also "lifts the basis" for CFEi's motion "above the level of speculation." *Id.*

Second, the court compels the disclosure because the information requested is relevant to the issue of bias. Courts regularly recognize bias as a sound basis for ordering discovery into litigation funders. *See, e.g.*, *BCBSM, Inc v. Walgreen Co.*, No. 20 C 01853, 2023 WL 3737724, at *3 (N.D. Ill. May 31, 2023) ("Bias in its myriad forms is always relevant and never collateral." (quoting *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Phys. Assurance Corp.*, 317 F.R.D. 620, 625–26 (N.D. Ill. 2016))); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 572704, at *4 (E.D. Tenn. Feb. 24, 2022) (granting a motion to compel on the issue of litigation funding because the existence of a relationship between a party and the payor of that party's legal fees "may indicate bias" (quoting *In re Complaint of Foss Mar. Co.*, No. 5:12-CV-21-TBR-LLK, 2015 WL 1249571, at *2 (W.D. Ky. Mar. 18, 2015))). Although the defendants argue that these (and other) cases are distinguishable because Gutiérrez does not know who is funding his legal fees, (Docket Entry No. 323 at 10), CFEi's bias argument is "not confined to Gutiérrez (and Turrent)." (Docket Entry No. 311 at 12; *see also* Docket Entry No. 330 at 8). As CFEi points out,

WWM co-founder Matthew Calhoun, a key witness, has offered to pay the legal fees of another witness, Mark Bayse, who owned a WWM subsidiary.[6] (Docket Entry No. 311 at 12 (citing Docket Entry No. 312-7 at 4)). CFEi's reply brief also identifies financial ties between Turrent and another anticipated WWM-affiliated trial witness, Arlin Travis. Turrent repaid a no-interest loan provided by Travis in July 2026, days before CFEi filed this motion to compel. (Docket Entry No. 330 at 2, 5–6). Courts have found that potential witness bias is sufficient to order disclosure of litigation funding. *See Nunes*, 2021 WL 7186264, at *6 ("However, he is also a witness in this case and Defendants are entitled to inquire about his interests in the lawsuit that may illuminate a possible bias."). Potential witness bias is, alone, a sufficient basis for this court to grant the motion.

Finally, CFEi is correct that Gutiérrez and Turrent may pursue a "David versus Goliath" narrative at trial. (Docket Entry No. 311 at 14). Gutiérrez and Turrent have already presented this narrative in this litigation. *See* Docket Entry No. 68 at 6 ("[I]f the case remains in this forum, Defendants, who are two individuals in a monetary Davids versus Goliath situation, will be unable to efficiently and effectively defend themselves given the extraordinary costs and inconvenience it will take to obtain evidence.")). Courts have repeatedly allowed discovery into the sources of a party's litigation funding when that party presents such a narrative. *See, e.g.*, *Nunes*, 2021 WL 7186264, at *6; *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (noting that the requested discovery "concern[s] Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial. Plaintiff claims that any such narrative is speculative, but Defendants are entitled to conduct discovery that may refute potential trial themes, and Defendants note that at least some evidence suggests that such a narrative will be asserted in this case").

---

[6] Bayles rejected Calhoun's offer. (Docket Entry No. 312-7 at 4). As the court sees it, this evidence shows (among other things) that it is not speculative to assume that an entity connected to WWM may be funding the defense fees in this litigation.

The defendants argue that their reliance on this narrative should be disregarded as a basis for compelling disclosure because they made that statement in a 2023 filing. (Docket Entry No. 323 at 12). But the bar for relevance is not high. *See Nunes*, 2021 WL 7186264, at *3 ("Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case. (quoting *Kampfe*, 304 F.R.D. at 557)). The defendants have put the David-and-Goliath narrative on the table in the past, which is sufficient evidence that "such a narrative will be asserted in this case" to justify discovery. *Cont'l. Cirs. LLC*, 435 F. Supp.3d at 1019. In addition, as CFEi points out, at the pre-motion conference on this issue, Gutiérrez's lawyers continued to allude to a David versus Goliath imbalance. (Docket Entry No. 311 at 14–15 (quoting Docket Entry No. 317 at 9 ("Well, they have five [lawyers], which is extraordinary . . . He's faced the team of Paul Weiss's unbelievably aggressive lawyers. No holds barred."))). Given that Gutiérrez and Turrent have in the past, and continue to invoke, a David versus Goliath narrative, it is not "speculative" to assume that they may do so at trial.[7]

Finally, courts have rejected the argument that the defendants make that Gutiérrez's ignorance of who is paying the legal bills makes the source irrelevant. In *Nunes v. Lizza,* the Northern District of Iowa compelled discovery as to the litigation funder, even though the plaintiff did not know the identity of the funder. The *Nunes* court explained that "[t]hese circumstances may not ultimately turn out to be 'untoward,' but they are certainly unusual. Moreover, these circumstances lift the basis for Defendants' inquiry above the level of mere speculation and raise legitimate subjects for inquiry not present in a more run-of-the-mill personal injury case or commercial dispute." *Nunes*, 2021 WL 7186264, at *4. Similarly, this is no "run-of-the-mill"

[7] The fact that *Nunes* and *Continental Circuits* involved defendants' request for information about litigation funding, and this case involves the plaintiff's request, does not affect the analysis. The information is relevant and is needed not only to potentially show the relationships that allegedly led to the contract awards but also to respond to the defendants' efforts to pursue a David v. Goliath narrative at trial.

breach of contract case. This case involves billions of dollars' worth of allegedly improperly awarded contracts based on undisclosed conflicts of interest arising from relationships between Gutiérrez (and Turrent) and third parties who gained from those contracts. As in *Nunes*—a case that the defendants try to distinguish only on the vague assertion that it involved "unique" circumstances, (Docket Entry No. 323 at 8)—the circumstances presented, including the allegations of significant public corruption and cronyism involving billions of dollars, raise CFEi's discovery request "above the level of mere speculation." *Nunes*, 2021 WL 7186264, at *4.

"[I]t would be inappropriate to deny discovery of the facts it issue where" all three of CFEi's theories of relevance are reasonable. *BCBSM, Inc.*, 2023 WL 3737724, at *3. The court grants the motion to compel. (Docket Entry Nos. 310, 311). Gutiérrez must disclose the identity of the third party or parties paying for his legal fees no later than August 21, 2026. This disclosure must include any intermediary parties in the payment chain and those who own or control these parties.

SIGNED on August 17, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge